UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ERIC SULLIVAN and DANIELLE SULLIVAN, individually and as Parents, natural guardians, and next friends of A.S., a minor child.<br><br>*Plaintiffs,*<br><br>v.<br><br>CARNIVAL CORPORATION, LTD., formerly known as Carnival Corporation, d/b/a Carnival Cruise Line,<br><br>*Defendant.* | § § § § § § § § § § § § § § § | CIVIL ACTION NO. _____ |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, A.S., a minor, by and through ERIC SULLIVAN and DANIELLE SULLIVAN, as parents, natural guardians, and next friends, and ERIC SULLIVAN and DANIELLE SULLIVAN, individually, file this Original Complaint against Defendant Carnival Corporation, a foreign corporation doing business as Carnival Cruise Line, and respectfully allege as follows:

## I.   INTRODUCTION

1.   This is a maritime personal-injury case involving a preventable needle-stick injury to a minor passenger aboard a Carnival cruise vessel.

2.   While lawfully occupying his passenger cabin aboard the Carnival vessel M/V CARNIVAL SUNRISE, minor Plaintiff A.S. was punctured by a hollow-bore needle that was on the floor of his cabin.

3.    The needle was a dangerous, contaminated, and biohazardous object in a place where no passenger—especially no child—should ever encounter medical waste, sharps, or used needles.

4.    The incident caused the minor Plaintiff to undergo needle-stick and bloodborne-pathogen protocols, including evaluation for potential exposure to HIV, hepatitis B, hepatitis C, and other infectious diseases; serial testing; medication and/or prophylactic treatment; follow-up medical care; and a prolonged period of fear, sickness, anxiety, and physical symptoms.

5.    The needle-stick protocols and treatment caused the minor Plaintiff to become severely sick, including nausea, vomiting, fatigue, weakness, headaches, and other symptoms, and caused significant physical pain, mental anguish, emotional distress, fear of infection, disruption of normal childhood activities, and other damages.

6.    This incident occurred because Carnival failed to provide a reasonably safe cabin, failed to reasonably inspect and clean the cabin, failed to discover and remove a dangerous sharp/biohazard before allowing the cabin to be occupied, failed to properly supervise and train its crew, and/or is vicariously liable for the negligence of its employees, crew, agents, and apparent agents.

## II.    PARTIES

7.    Plaintiff A.S. is a minor and was, at all material times, a fare-paying passenger and business invitee aboard Carnival's vessel.

8.    Plaintiff ERIC SULLIVAN is the father and legal guardian of A.S. and brings this action as parent, natural guardian, and next friend of the minor Plaintiff. Plaintiff ERIC SULLIVAN also brings an individual claim, to the extent permitted by applicable

maritime law, for medical expenses, out-of-pocket expenses, and other recoverable damages incurred or to be incurred because of the injuries to the minor Plaintiff.

9.    Plaintiff DANIELLE SULLIVAN is the mother and legal guardian of A.S. and brings this action as parent, natural guardian, and next friend of the minor Plaintiff. Plaintiff DANIELLE SULLIVAN also brings an individual claim, to the extent permitted by applicable maritime law, for medical expenses, out-of-pocket expenses, and other recoverable damages incurred or to be incurred because of the injuries to the minor Plaintiff.

10.    Defendant CARNIVAL CORPORATION, LTD. ("Carnival"), formerly known as Carnival Corporation, is a foreign corporation doing business as Carnival Cruise Line. Carnival Corporation Ltd. maintains its principal United States headquarters at Carnival Place, 3655 N.W. 87th Avenue, Miami, Florida, and at all relevant times owned, operated, managed, maintained, controlled, staffed, and/or marketed the M/V CARNIVAL SUNRISE. Defendant may be served with process by serving its registered agent for service, CT Corporation System, at 1200 S. Pine Island Road Plantation, FL 33324.

11.    At all relevant times, Carnival acted by and through its employees, crew members, officers, managers, contractors, medical personnel, cabin stewards, housekeeping staff, maintenance staff, sanitation staff, security personnel, agents, and/or apparent agents, all of whom were acting within the course and scope of their duties for Carnival.

### III.    JURISDICTION AND VENUE

12.    Pursuant to U.S.C. § 1332, the Court has jurisdiction over the lawsuit because Plaintiffs and Defendants are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs of court.

13. Plaintiffs have complied with all conditions precedent, contractual notice requirements, and statutory prerequisites to suit, or such conditions have been waived, excused, tolled, are inapplicable, or cannot lawfully bar this action.

14. To the extent Carnival contends that any contractual notice provision applies, Plaintiffs plead that Carnival had actual knowledge of the incident, was not prejudiced by any alleged notice issue, failed to timely object to any alleged notice defect, and/or the notice period was tolled or excused under applicable law, including because the injured claimant is a minor.

## IV.    FACTUAL BACKGROUND

15. On or about May 26 through May 31, 2025, Plaintiffs were passengers aboard the M/V CARNIVAL SUNRISE during a Carnival cruise.

16. Carnival assigned Plaintiffs and their family to side-by-side interior cabins. Carnival initially informed the family that the cabins were still being cleaned. After the vessel departed, Carnival permitted Plaintiffs and their family to access the cabins and begin unpacking for the cruise.

17. Before the first dinner of the cruise, A.S. was unpacking his luggage, organizing his belongings, and placing items under the bed in his cabin. While A.S. reached underneath the bed for shoes he had placed there, he was punctured by a sharp object and began bleeding from his finger.

18. Plaintiff, Eric Sullivan inspected the area under the bed and recovered a dirty, used needle, needle cap, and/or sharp medical object. The object was bent and had unknown residue on it. Neither A.S. nor his family brought the needle, needle cap, or sharp medical

object into the cabin, used it, placed it under the bed, or had any reason to expect that a contaminated sharp would be present in the cabin.

19. Before Plaintiffs occupied the cabin, Carnival and its crew had exclusive or superior access to inspect, clean, sanitize, prepare, and make the cabin safe for incoming passengers. The needle, needle cap, and/or sharp medical object was located in an area under the bed that should have been discovered and removed during a reasonable cabin cleaning, turnover, and inspection.

20. Upon information and belief, the object was left by a prior passenger, mishandled by Carnival personnel, transferred into the cabin through Carnival's linen, waste, or cleaning process, or otherwise allowed to remain in the cabin because of Carnival's inadequate inspection, cleaning, sanitation, and turnover procedures.

21. After the incident, Carnival housekeeping personnel admitted that the needle, needle cap, and/or sharp medical object had been missed during the cleaning and turnover of the cabin, and stated that they would perform another sweep Plaintiffs' cabins to ensure nothing else had been missed.

22. Carnival could not identify who had used the object, how long it had been in the cabin, whether it came from a prior passenger or Carnival personnel, or whether it had been contaminated. Carnival requested possession of the object, but Carnival personnel advised that the object could not be tested aboard the vessel.

23. Immediately after the puncture, the family cleaned A.S.'s finger with an alcohol pad, applied pressure to stop the bleeding, and took A.S. to the ship's infirmary. At the infirmary, Carnival's medical personnel initially did not appear to appreciate the

seriousness of the exposure risk. After Eric Sullivan advised that he was a paramedic and that Danielle Sullivan was a nurse, a shipboard physician became involved.

24. A.S. remained in the ship's clinic for several hours while Carnival's medical staff evaluated the exposure and determined the course of treatment. During this initial clinic visit, Carnival's medical personnel administered the first dose of the hepatitis B vaccine series, drew blood, and prescribed antiviral medication intended to address the potential risk of HIV exposure.

25. A.S. began the antiviral medication that evening. Overnight, he became ill and complained of chest pain, stomach cramps, and nausea. The following evening, A.S. again became ill within approximately 30 minutes of taking the medication. His symptoms were more intense, and Danielle returned with him to the ship's clinic.

26. The shipboard physician advised that A.S.'s symptoms were side effects of the medication. The physician and family discussed measures to reduce the side effects, including changing the timing of the medication and using an antacid. However, for the remainder of the cruise, A.S. continued to experience significant gastrointestinal symptoms, including nausea, stomach cramps, and frequent trips to the restroom.

27. On the last night of the cruise, the family met with the ship's hospitality manager, who apologized for the incident and offered Eric and Danielle a couples massage as compensation. The family declined.

28. After disembarking, A.S. continued to suffer gastrointestinal symptoms and, after the family returned home, Danielle contacted A.S.'s pediatrician, who referred them for specialized infectious-disease care. A.S. was then evaluated by a retroviral specialist, who reviewed the shipboard records and advised that the medication prescribed aboard the

vessel was not the correct combination because it was missing a primary component intended to protect against HIV.

29. Because A.S. had become severely ill from the medication prescribed aboard the vessel, the specialist recommended that he stop taking it. The specialist established a follow-up plan that included multiple blood draws, additional hepatitis B vaccine doses, and follow-up appointments over the next six-months.

30. A.S. experienced anxiety and distress during the follow-up blood draws and medical appointments, including fear associated with the cruise-ship blood draw and the underlying concern that he had been exposed to a contaminated needle. A.S.'s gastrointestinal symptoms gradually resolved over several days after stopping the shipboard medication, but the emotional impact and follow-up medical process continued for months.

31. As a result of the incident, A.S. suffered a puncture wound, physical sickness, pain, nausea, gastrointestinal distress, fear of infectious disease, anxiety, emotional distress, loss of enjoyment of the cruise, disruption of normal activities, and the burden of prolonged needle-stick protocols and follow-up care.

32. Plaintiffs incurred medical expenses, out-of-pocket expenses, travel-related disruption, and other damages, and will continue to incur damages in the future, and Carnival's conduct was a legal, factual, direct, and proximate cause of Plaintiffs' injuries and damages.

## V.    COUNT 1 - NEGLIGENCE

33.    At all material times, Carnival owed its passengers, including the minor Plaintiff, a duty to exercise reasonable care under the circumstances. Carnival breached this duty, which proximately caused the injures to Plaintiffs and their damages.

34.    Carnival was not an insurer of passenger safety, but it was required to act reasonably under the circumstances, including by maintaining reasonably safe cabins, reasonably inspecting passenger cabins, reasonably cleaning passenger cabins, reasonably removing dangerous objects and biohazards, and reasonably protecting passengers from known or reasonably foreseeable dangers.

35.    In this connection, Plaintiffs will show that the Defendants knew, or by the exercise of reasonable care should have known, of the dangerous condition and risk-creating condition because, among other reasons:

   a.    Carnival controlled passenger-cabin cleaning, inspection, and turnover;
   b.    Carnival knew or should have known that needles, syringes, medical sharps, medications, and biohazardous objects may be left by prior passengers;
   c.    Carnival's own cleaning, sanitation, housekeeping, security, and/or medical policies recognize the danger of sharps and biohazardous materials;
   d.    Carnival's crew had the opportunity and responsibility to inspect and clean the cabin before allowing Plaintiffs to occupy it;
   e.    the needle was located in an area that should have been discovered through reasonable cabin cleaning and inspection;
   f.    Carnival had superior access to information regarding prior similar incidents, complaints, reports, maintenance issues, housekeeping failures, sharps-disposal problems, and biohazard issues aboard its vessels;
   g.    Carnival knew or should have known from prior incidents, passenger reports, crew reports, claims, complaints, safety audits, medical logs, cleaning logs, and/or housekeeping records that passenger cabins can contain dangerous sharps or biohazardous objects if not properly inspected; and
   h.    Carnival knew or should have known that failure to discover and remove a needle from a passenger cabin creates an unreasonable risk of puncture injury and bloodborne-pathogen exposure.

36.      Plaintiffs will further show that the Defendants were negligent in one or more of the following particulars:

a. failing to provide a reasonably safe passenger cabin;

b. failing to reasonably inspect Plaintiffs' cabin;

c. failing to reasonably clean Plaintiffs' cabin;

d. failing to discover and remove a hollow-bore needle from the cabin floor;

e. failing to discover and remove a dangerous sharp and biohazardous object before allowing Plaintiffs to occupy the cabin;

f. failing to implement and enforce adequate cabin-turnover procedures;

g. failing to implement and enforce adequate housekeeping and sanitation procedures;

h. failing to implement and enforce adequate procedures for the discovery, handling, reporting, and disposal of needles, syringes, sharps, and biohazardous materials;

i. failing to provide reasonably safe sharps-disposal practices aboard the vessel;

j. failing to train cabin stewards, housekeeping staff, sanitation staff, and other crew members to search for and safely remove needles, syringes, sharps, and biohazardous materials;

k. failing to supervise and audit cabin-cleaning and inspection procedures;

l. failing to warn Plaintiffs of a dangerous condition Carnival knew or should have known existed;

m. failing to maintain adequate logs, checklists, inspections, and safety procedures for passenger cabins;

n. failing to reasonably respond to the foreseeable risk that dangerous objects may be left in passenger cabins by prior occupants;

o. failing to exercise heightened care in cabins assigned to families and minor passengers;

p. failing to follow Carnival's own policies, procedures, standards, manuals, training materials, safety protocols, sanitation protocols, and housekeeping procedures;

q. failing to comply with applicable industry standards, cruise-industry safety practices, sanitation standards, and reasonable maritime practices concerning cabin safety and biohazard control; and

r. otherwise failing to exercise reasonable care under the circumstances.

37.   The injuries and damages sustained by Plaintiffs were proximately caused by the negligent actions and conduct of the Defendants.

38.   Alternatively, Carnival is vicariously liable for the negligent acts and omissions of its employees, crew members, agents, and/or apparent agents who failed to clean, inspect, sanitize, secure, maintain, prepare, and make Plaintiffs' cabin safe, and whose negligence occurred within the course and scope of their work for Carnival.

## VI.    COUNT 2 – GROSS NEGLIGENCE

39.    Plaintiffs will show that Defendant's acts or omissions, both individually and by and through their agents, servants and/or employees, were such that when viewed objectively from the standpoint of the actor at the time of the occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, of which the Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiffs, and others similarly situated, and/or with malice, which was also a proximate cause and/or a producing cause of injuries and damages to Plaintiffs.

## VII.    COUNT 3 - VICARIOUS LIABILITY & RESPONDEAT SUPERIOR

40.   At all material times, Carnival acted through its employees, crew members, officers, cabin stewards, housekeeping staff, maintenance staff, sanitation personnel, security personnel, medical personnel, agents, and/or apparent agents. These individuals were acting within the course and scope of their employment, agency, apparent agency, service, or work for Carnival.

41.   Carnival's employees, crew members, agents, and/or apparent agents were responsible for cleaning, inspecting, sanitizing, preparing, maintaining, and making safe

passenger cabins. Carnival's employees, crew members, agents, and/or apparent agents were negligent by failing to reasonably inspect the cabin, failing to discover the needle, failing to remove the needle, failing to report the hazardous condition, failing to properly handle and dispose of sharps or biohazardous materials, and failing to make the cabin safe before allowing Plaintiffs to occupy and use it.

42. Carnival's employees, crew members, agents, and/or apparent agents were also negligent to the extent the needle was introduced, dropped, misplaced, mishandled, or left in the cabin by Carnival personnel.

43. The negligence of Carnival's employees, crew members, agents, and/or apparent agents occurred within the course and scope of their work for Carnival. Accordingly, Defendants are legally liable for the negligent acts or their agents, servants and/or employees.

### VIII. COUNT 4 - NEGLIGENT TRAINING, SUPERVISION, AND SAFETY MANAGEMENT

44. Plaintiffs incorporate all preceding paragraphs as if fully set forth here.

45. Carnival owed passengers a duty to reasonably hire, train, supervise, retain, manage, and instruct its crew members and personnel regarding passenger-cabin cleaning, inspection, sanitation, maintenance, biohazard control, sharps handling, incident reporting, and passenger safety.

46. Carnival breached this duty by acts and omissions including, but not limited to:

    a. failing to train crew members to identify, handle, and dispose of needles, syringes, sharps, and biohazardous materials;

    b. failing to supervise and audit housekeeping staff and cabin stewards;

    c. failing to provide adequate cabin-turnover checklists and inspection protocols;

    d.  failing to ensure that cabins were inspected before being released to incoming passengers;

    e.  failing to provide adequate procedures for the reporting and preservation of hazardous-condition evidence;

    f.  failing to maintain adequate logs or documentation of cabin inspections;

    g.  failing to discipline, retrain, or correct unsafe housekeeping and sanitation practices;

    h.  failing to adopt reasonable safety-management policies to prevent sharps and biohazards from being left in passenger cabins; and

    i.  failing to enforce its own policies and reasonable maritime safety practices.

47.   Carnival knew or should have known that inadequate training, supervision, policies, procedures, and safety management regarding cabin inspections and biohazardous sharps would create an unreasonable risk of injury to passengers, including children.

48.   Carnival's negligent training, supervision, retention, policies, procedures, and safety management caused Plaintiffs' injuries and damages.

## IX.    COUNT IV — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

49.   Plaintiffs incorporate all preceding paragraphs as if fully set forth here.

50.   The minor Plaintiff suffered a physical impact and physical injury when the hollow-bore needle punctured his skin. The needle-stick placed the minor Plaintiff in immediate risk of physical harm, including potential exposure to bloodborne pathogens and infectious disease.

51.   Further, Carnival's negligence caused the minor Plaintiff to reasonably fear that he had been exposed to a contaminated needle and potential infectious disease. The minor Plaintiff's fear and mental suffering were not speculative or abstract. They arose from an actual puncture wound, actual medical evaluation, actual needle-stick protocols, actual

testing, actual treatment and/or prophylaxis, and a prolonged period of medical uncertainty.

52. As a result, the minor Plaintiff suffered emotional distress, fear, anxiety, mental anguish, sleep disturbance, physical sickness, disruption of normal activities, and other manifestations of injury.

53. Plaintiffs seek recovery for the minor Plaintiff's emotional distress, mental anguish, mental suffering, and psychological injury because those damages resulted from physical injury and/or actual risk of physical injury caused by Carnival's negligence.

## X. DAMAGES

54. As a direct and proximate result of Carnival's negligence, minor Plaintiff A.S. suffered injuries and damages including, but not limited to:

a. puncture wound from a hollow-bore needle;
b. physical pain and suffering;
c. sickness and adverse physical symptoms caused by medical protocols, medications, prophylaxis, testing, treatment, stress, and/or the exposure event;
d. fear of HIV, hepatitis B, hepatitis C, and other infectious diseases;
e. mental anguish, emotional distress, anxiety, fear, and psychological injury;
f. medical testing and serial follow-up testing;
g. medical treatment, medications, and/or prophylactic care;
h. loss of enjoyment of life;
i. inconvenience;
j. disruption of childhood activities, school, sleep, family life, and normal activities;
k. future medical monitoring, evaluation, and treatment, and
l. future mental anguish and emotional distress.

55.    Plaintiffs ERIC SULLIVAN and DANIELLE SULLIVAN, individually, incurred and will incur medical expenses, travel expenses, out-of-pocket expenses, and other recoverable damages arising from the minor Plaintiff's injuries.

56.    Plaintiffs seek recovery of all damages permitted by law, including pre-judgment interest, post-judgment interest, taxable costs, and all other relief the Court deems just and proper.

## XI.    CONDITIONS PRECEDENT

57.    Carnival had actual knowledge of the incident and injury at issue, and all conditions precedent to Plaintiffs' claims have occurred, have been performed, have been waived, have been excused, are inapplicable, or cannot lawfully bar Plaintiffs' claims.

## XII.    DEMAND FOR JURY TRIAL

58.    Plaintiffs hereby request a jury trial and tenders the appropriate fee with the filing of this petition.

## XIII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant, CARNIVAL CORPORATION, LTD., be cited in terms of law to appear and answer herein, and that upon final hearing hereon, for judgment of and against Defendants in an amount in excess of the minimum jurisdictional limits of this Court; pre-judgment interest and post-judgment interest as allowed by law; for exemplary and punitive damages, for costs of court, and for such other and further relief, both general and special, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

APFFEL LEGAL, PLLC

By: _____

DARRELL A. APFFEL
State Bar No. 01276600
Darrell@apffellegal.com
D. BLAKE APFFEL
State Bar No. 24081911
Blake@apffellegal.com
ALLIE APFFEL MCWILLIAMS
State Bar No. 24146679
Allie@apffellegal.com
JESSICA CLARK
State Bar No. 24095810
Jessica@apffellegal.com
104 Moody Ave. (21st)
Galveston, Texas 77550
P.O. Box 1078
Galveston, Texas 77553
Tel. (409) 744-3597
Fax (281) 612-9992

*ATTORNEYS FOR PLAINTIFFS*